## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Patricia Diana Mendez, Joseph Valle, | ) |
| Catherine McCarthy, Brian K. Turner | ) |
| And Randy Sadler | ) |
| individually and on behalf of all persons | ) |
| similarly situated as | ) CASE NO 24 CV 10867 |
| members of the Collective as permitted | ) |
| under the Fair Labor Standards Act | )**Honorable Thomas M. Durkin.** |
| | )**Magistrate Judge** |
| | )**the Honorable Maria Valdez.** |
| | ) Honorable District Judge |
| Plaintiffs, | ) |
| vs. | ) |
| Ada S. McKinley Community Service Inc., | ) |
| And Nestor I. Flores, | ) |
| Jamal K. Malone, Valerie Mercer | ) |
| Johnathan Johnson | ) **JURY TRIAL DEMANDED** |
| as individuals | ) **ON ALL COUNTS** |
| under FLSA and Illinois Wage Laws | ) |
| Defendants | ) |

## <u>SECOND AMENDED COMPLAINT</u>

NOW COME the Plaintiffs, Joseph Valle, Patricia Diana Mendez, Catherine McCarthy, Brian K. Turner and Randy Sadler individually and on behalf of all others similarly situated, as collective representatives, by and through their undersigned counsel of record, John C. Ireland of the Law Office of John C. Ireland, upon personal knowledge as to those allegations in which they so possesses and upon information and belief as to all other matters, pursuant to §216(b) of the Fair Labor Standards Act (hereinafter "FLSA"), the Illinois Minimum Wage Law 820 ILCS 105/1 *et seq* (hereinafter "IMWL" ), the Illinois Wage Payment and Collection Act (hereinafter "IWPCA"), the Chicago Minimum Wage Ordinance (hereinafter "CMWO"), Illinois' Chicago Paid Leave and Paid Sick and Safe Leave Ordinance (hereinafter

1

"CPLPSSLO") and Chicago Paid Sick Leave Ordinance (CPSLO) and for violations of IRS statutory provisions 7434, brings these causes of action against Defendant Ada S. McKinley Community Service Inc., (Hereinafter referred to as "McKinley" and/or "Corporate Defendant") and Nestor I. Flores, Jamal K. Malone, Valerie Mercer and Johnathan Johnson individually, in so doing states the following:

## NATURE OF THE ACTION

1.        Plaintiffs Joseph Valle, Patricia Diana Mendez, Catherine McCarthy, Brian K. Turner, and Randy Sadler allege individually and on behalf of themselves and other similarly situated current, former and future employees of the Defendant, (Hereinafter references to "Plaintiff" are inclusive of both Individual Plaintiffs and those employees that are similarly situated to the Individual Plaintiffs) that they, under both federal and state wage laws, are entitled to be paid for all hours worked and to receive minimum wage for all hours worked and/or receive time and half for all hours worked over forty (40) hours per week and to be paid at the proper rate of pay.

2.        This action is also brought as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, 207 and 216(b) to recover unpaid wages for similarly situated employees of Defendant McKinley.

3.        The Plaintiffs' primary and foundational claims for overtime wages are based on Defendants odd and archaic payment of Plaintiffs (and FLSA collective) by "piece-rate" payment method. Defendants implementation and use of this pay policy fails to pay Plaintiffs (and FLSA collective) any overtime wages at an overtime rate of pay.

4.        In response to this filed lawsuit it has been suggested that the Plaintiffs are exempt workers paid on a "fee basis", thus they are not owed any overtime wages as

2

they are exempt. This defense is also incorrect as Plaintiffs are not paid on a fee basis as described in the sub-section below in detail.

5. Plaintiffs also present an alternative basis for claims of misclassification, if Plaintiffs were paid on a "Fee basis", this exemption is also lost because the Plaintiffs were partly paid on an hourly basis. Paying a "fee basis" exempt employee on an hourly basis, in any manner, defeats the claims of exemption. Here Plaintiffs allege (and will prove) that Defendants partly based Plaintiffs wage payments on the number of hours worked.

6. Plaintiffs Joseph Valle, Patricia Diana Mendez, Catherine McCarthy, Brian K. Turner also bring claims for wage retaliation(s) pursuant to the FLSA, IMWL, CMO and IWPCA in that Plaintiffs asked for their wages and benefits and were terminated shortly after said wage complaint.

7. Plaintiff McCarthy clarifies that while she was retained by Defendants, that the Defendants retaliations have continued after her "re-hire" in December of 2024 and her damages thus have continued until the present

8. This action is also brought as Individual actions under the IWPCA, in that Defendants failed to owed wages pay within thirteen days of the end of the pay period.

9. Plaintiffs also present "late payment" claims pursuant to the FLSA, IMWL and CMWO

10. Plaintiffs also bring claims for failure to provide and credit Plaintiffs with paid time off, both for personal time (PTO) and sick leave (SL). Plaintiffs make these

3

claims pursuant to the Chicago Paid Leave and Paid Sick and Safe Leave Ordinance as well as its precursor Chicago Paid Sick Leave Ordinance (CPSLO).

11. Plaintiff Mendez also brings a claim for fraudulent filings with the IRS in that Defendant McKinley failed to report payments to Plaintiff and/or willfully reported Plaintiff wages incorrectly to the IRS in violation of section 7434.

12. Plaintiffs, in their individual and collective claims, requests injunctive and declaratory relief, and compensation and credit for all uncompensated work required, suffered, and/or permitted by Defendant, liquidated and/or other damages as permitted by applicable law, restitution and payment of all benefits Defendants obtained from their unlawful business practices and attorneys' fees and costs.

13. Plaintiffs seek injunctive and declaratory relief for the classes non-monetary claims.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1331 and 1337 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C 1332 and 1367. This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1331 based on 29 U.S.C. 216(b) known as the Fair Labor Standards Act.

15. This court has supplemental jurisdiction over Plaintiffs state law claims pursuant to 28 U.S.C 1332 and 1367 and Plaintiff seeks application of the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* ("IMWL").

16. The Court is authorized to issue a declaratory judgment.

17. Venue is proper in this Court.

4

18. Defendant McKinley does business and is a resident of this District and Division of Federal Court.

19. Defendant McKinley conducts business in Illinois and other states, thereby engages in Commerce.

20. Plaintiffs are/were individually engaged in commerce by doing business of the Defendant in Illinois and other states.

21. Plaintiffs present claims for FLSA pursuant to federal Jurisdiction based on the Plaintiffs' individual engagement in commerce.

22. Plaintiffs, as part of the job duties and job responsibilities, are required and have sent numerous communications via Email.

23. FLSA jurisdiction is established in that emails travel in interstate commerce thus the Plaintiffs are covered by the FLSA.

24. Plaintiffs also disseminate and/or submit other documents and communications via the internet, such as assessment reports, medical records, Medicare/Medicaid records and insurance information, all which travel in interstate commerce.

25. Defendant ADA McKinley employs more than four employees.

## FACTS REGARDING THE PLAINTIFFS

26. Plaintiffs Joseph Valle, Patricia Diana Mendez, Catherine McCarthy, Brian K. Turner, and Randy Sadler are all residents of the State of Illinois and non-exempt employees of corporate Defendant McKinley.

## MCKINLEY CORPORATE FACTS

5

27. Defendant McKinley is a not-for-profit business which does business in Illinois.

28. Defendant McKinley employs a staff of 100s full and part time employees at any one time.

29. Defendant McKinley is located in Chicago, Illinois.

## INDIVIDUAL DEFENDANT FACTS

30. Individual Defendants' Nestor I. Flores, Jamal K. Malone and Valerie Mercer are named individually pursuant to the following statuary authorities that allow for individual liability: FLSA, IMWL and IWPCA.

31. The Individual Defendants are named pursuant to the FLSA and IMWL based on the following facts:

32. Pursuant to the FLSA, IMWL and IWPCA as Individual Defendants' Nestor I. Flores, Jamal K. Malone and Valerie Mercer were managers with the ultimate decision-making authority for the various wage violations.

33. As managers of the Corporate Defendant, Individual Defendants' Nestor I. Flores, Jamal K. Malone and Valerie Mercer had the power to hire, fire and discipline employees.

34. As managers of the Corporate Defendant, Individual Defendants' Nestor I. Flores, Jamal K. Malone and Valerie Mercer caused the wage violations either by creating or continuing the corporate Defendant's improper payment methods.

35. As managers of the Corporate Defendant Nestor I. Flores, Jamal K. Malone and Valerie Mercer operate the corporate Defendant in regards to the Plaintiffs employment.

36. Defendants Nestor I. Flores, Jamal K. Malone and Valerie Mercer have day to day control of operations of the Corporate Defendant, and are directly involved in the payment (and shortage) of wages to the employees via handling or overseeing the payroll and implementation of piece-rate payment system.

37. Defendants Nestor I. Flores, Jamal K. Malone and Valerie Mercer were aware that each time Plaintiffs worked over 40 hours, that Plaintiffs were not paid overtime.

38. Defendants Nestor I. Flores, Jamal K. Malone and Valerie Mercer were engaged in the wage retaliation, in that they were involved in the decision to terminate Plaintiffs after the Plaintiffs' complained about their wages and or working conditions.

39. For judicial efficiently Plaintiffs ask the court to consider these above individual liability allegations incorporated in the Plaintiffs Counts found below.

40. Dr. Johnathan Johnson is added as a new Defendant in this First Amended Complaint due to his repeated retaliations and constant harassment of the Plaintiffs. These retaliations are motivated by this lawsuit and Plaintiffs seeking payment of overtime wages, payment of Agreed-to wages, and other claims found in this lawsuit.

41. Dr. Johnson's retaliations include:

   a. Deducting approximate $900.00 from Plaintiff Valle's wages, without Consent or authorization.

   b. Removing Plaintiff Valle's system access in the midst of doing an assessment on December 4, 2024, causing Plaintiff to have to "hand-off" the assessment, thereby losing his earned wages for the assessment.

c. Dr. Johnson failed to correct either of these retaliations despite Plaintiff Valle's complaint that they were violations of the FLSA, IMWL and IWPCA.

d. Dr. Johnson also promised Plaintiff Mendez that her overdue nine (9) months of wages would be processed and paid in full, yet Plaintiff Mendez to this day has not been paid any wages, other than described below.

e. Dr. Johnson also removed Plaintiff Mendez from the schedule approximately two weeks before the filing of this Amended Complaint, without reason, thus for retaliatory reasons, and complaints to Defendants including Dr. Johnson have gone unanswered and Plaintiff's removal has not been explained in any manner.

f. Dr. Johnson also spoke to Plaintiff McCarthy and promised her a full time job, but failed to fulfil that promise in retaliation for her wage complaints.

## COLLECTIVE ACTION ALLEGATIONS

### The FLSA Collective Action

42. Plaintiffs bring claims for relief for violation of the FLSA as a collective action pursuant to Section 16(b) of the FLSA (29 U.S.C. § 216(b)), on behalf of all employees of McKinley who were, are, or will be employed by McKinley during the

8

period of three (3) years prior to the date of commencement of this action through the date of judgment in this action, who were not compensated at one-and-one-half times the regular rate of pay for all work performed in excess of forty (40) hours per work week (including payment by piece rate without payment of overtime) and/or who were not compensated at the federal minimum wage rate of $7.25 per hour and/or were paid at an improper rate of pay for overtime hours.

43.     The FLSA violation claims are brought and maintained as an "opt-in" collective action pursuant to § 16(b) of FLSA, 29 U.S.C. § 216(b), for all FLSA claims asserted by the Plaintiffs, since the FLSA claims of the Plaintiffs are similar to the FLSA claims of all employees employed by McKinley.

44.     Defendants are liable for improperly compensating Plaintiffs and FLSA Collective under the FLSA, and as such notice should be sent to the FLSA Collective. There are numerous similarly situated current and former employees of McKinley who have been denied proper payment of the overtime wages. These current, former and future employees would benefit from the issuance of a court supervised notice of the present lawsuit and the opportunity to join in the present lawsuit. The similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.

## STATEMENT OF FACTS

**A.      McKinley policies and procedures and Compensation Practices fail to pay proper overtime rate of pay and/or pay overtime hours**

45.     Plaintiffs are/were employed by McKinley as hourly paid employees of the Defendant and Plaintiffs worked beyond forty hours, but Defendants failed to pay

overtime at the proper and correct rate of pay and/or failed to pay overtime rate for any of the worked overtime hours.

## FAILURE TO PAY OVERTIME

## VIA IMPROPER PAYMENT OF PIECE-RATE WAGES

46. Plaintiffs Joseph Valle, Patricia Diana Mendez, Catherine McCarthy and Brian K. Turner, and Randy Sadler work/worked as hourly non-exempt employees of Defendant.

47. Plaintiffs Joseph Valle, Patricia Diana Mendez, Catherine McCarthy, Brian K. Turner, and Randy Sadler work/worked as Mobile Crisis Response Workers and/or MCR Crisis Workers.

48. Defendants paid Plaintiffs using an odd and convoluted payment scheme that is best described as an archaic "Piece Work" payment method.

49. Plaintiffs are paid by piece-work as follows: Plaintiffs are paid a set amount "per assessment" of persons in possible need of social or medical services.

50. Thus the more assessments completed by the Plaintiffs the more wages the Plaintiffs receive.

51. Plaintiffs allege the following violations based on this piece-rate payment method: (1) Plaintiffs were not paid at an overtime rate for overtime hours, (2) Plaintiffs were not given an explanation of how their wages were calculated, (3) Plaintiffs were not paid for most of their non-productive hours, (4) Plaintiffs didn't have an agreement with Defendants for most terms and/or for counting non-productive hours when calculating overtime rates, and (5) Plaintiffs worked more than 40 hours in many workweeks (6) Plaintiffs were not paid ANY overtime wages for productive or non-productive work hours.

52. Additionally Plaintiffs piece rate payment method is also augmented by a per piece payment per day for being on call.

53. This "on call" piece rate payment is paid regardless of the number of assessments done by the Plaintiffs.

54. While this payment method, piece-rate, is somewhat archaic, it is entirely a proper and legitimate way to pay employees, however piece rate payment does require that the employer record and keep records of the overtime hours of the employees working under the piece rate and to pay the overtime hours at an overtime rate. Defendants here neither record overtime hours nor record payment of overtime hours at overtime rate.

55. The fact that Plaintiffs are paid by piece-rate is further shown in that Plaintiffs are paid zero ($0.00) for an assessment that is not completed.

56. If an assessment is incomplete for whatever reason, the Plaintiff receives no pay for that assessment or for the work time related to that work (other than the token day rate).

57. Defendants "per assessment" policy is comparable to an piece-rate assembler getting nothing for an half assembled car, bike or widget.

58. In addition to keeping and maintaining the records of overtime hours worked, the employer is also required to pay the employees for the overtime hours worked, simply paying the piece rate at the regular rate for overtime hours, is not permitted.

59. Unfortunately the improper payments of overtime (or payment of no overtime) is exactly what the Defendants are doing; Defendants pay only the piece rate and pay nothing additional for the thousands (or tens of thousands) of overtime hours worked by the Plaintiffs and the collective.

11

60. This is further demonstrated as Defendants does not keep any records of the work hours of the Plaintiffs and collective.

61. Defendants keep only records of the number of assessments, and the days of "on call", but not the start time of work periods, lunch time, break time, and end time of work periods.

62. Thus Plaintiffs are owed overtime for the entire statutory period of two or three years for the violations of the FLSA, IMWL and CMWO.

## STATUTORY/CASELAW SUPPORT FOR IMPROPER PAYMENT VIA PIECE RATE METHOD OF PAYMENT

63. There is nothing wrong with paying employees by piece-rate *per se*. *See, e.g.,* 29 U.S.C. § 207(g); 29 C.F.R. 778.318(c). *Fitzgerald v. Forest River Manf. LLC*, Cause No. 3:20-CV-1004 DRL-MGG. (DC, N.D. Ind. South Bend Div. February 23, 2022).

64. FLSA allows employees to be paid at piece-rate for all time worked (productive and nonproductive), *see* 29 U.S.C. § 207(g), so long as it is understood by the parties that the employee is being compensated for all hours worked, *see* 29 C.F.R. § 778.318(c). Here there is no understanding as to the compensation method and/or Plaintiffs are not being compensated for all hours worked.

65. The FLSA doesn't define "piece-rate." *Alvarado v. Corp. Cleaning Serv., Inc.,* 2013 WL 6184044, 6, 2013 U.S. Dist. LEXIS 163894, 20 (N.D. Ill. Nov. 18, 2013).

66. "In a piece-rate system a worker is paid by the item produced by him: so much per scarf, for example, if his job is to make scarves.... Thus the scarf worker is paid for making scarves even if they haven't been sold—that is, even if he's

12

producing for inventory." *Alvarado v. Corp. Cleaning Servs.,* 782 F.3d 365, 367 (7th Cir. 2015).

67. Paying an employee by piece-rate involves paying by the job or by the product. *Hernandez v. City Wide Insulation of Madison, Inc.,* 508 F. Supp.2d 682, 688 (E.D. Wis. 2007). But, "the nomenclature is not determinative," as there are real differences between compensation systems. *Alvarado,* 782 F.3d at 367.

68. "Therefore, to determine the regular rate, which is the keystone of the Act, the piece work wages must be translated into an hourly rate. That regular rate should then be applied to the first 40 hours worked, and for all hours worked in addition a rate one and one-half times the regular rate must be paid." *Walling v. Alaska Pacific Consol. Min. C*o., 152 F. 2d 812 – (9th Circuit 1945)

69. Here Defendants do not do these required determinations, Defendants do not determine the regular rate, nor apply that rate to the overtime hours, nor record work hours nor overtime work hours.

**FLSA OVERTIME VIOLATIONS**

70. Plaintiffs are owed, pursuant to the FLSA, thousands of unpaid, or underpaid, overtime hours.

71. The claims pursuant to the FLSA are found described in the above section describing the Defendant's piece-rate payment method.

72. As per some District Judge's Plaintiffs will provide specific examples of FLSA violations to demonstrate the existence of FLSA Jurisdiction. These are

13

merely examples and are NOT the only claims of the Plaintiffs, rather jurisdiction examples provided as some District Judges require.

73. Plaintiff Patricia Diana Mendez was paid zero dollars for all her work since late 2023, thus Plaintiff has hundreds of FLSA minimum wage claims for these ten to eleven months. However for a specific weekly example, Plaintiff Mendez worked approximately 50 hours from 9/1/24 to 9/7/24, thus worked 10 hours of overtime. Despite working 10 hours of overtime, she was paid only the "piece-rate" payments, Plaintiff was not paid for the 10 hours of overtime at an overtime rate of pay.

74. Plaintiff Brian Turner worked 48 hours in the work week of 9/25/24 to 9/31/24, thus Plaintiff Turner worked 8 hours of overtime, yet due to the piece-rate payment method, Plaintiff was paid no overtime at an overtime rate of pay.

75. Plaintiff Katherine McCarthy worked 46 hours in the work week of 9/25/24 to 9/31/24, thus Plaintiff worked 6 hours of overtime. Yet she was paid no overtime at an overtime rate of pay, thus is owed 6 hours of overtime from this work week.

76. Finally Plaintiff J. Valle worked 44 hours in the work week of 9/25/24 to 9/31/24, thus worked 4 hours of overtime. Yet Plaintiff Valle was paid no overtime hours at an overtime rate of pay for this work week.

## IMWL OVERTIME VIOLATIONS

77. Plaintiffs are owed, pursuant to the IMWL, thousands of unpaid, or underpaid, overtime hours.

78. The claims pursuant to the IMWL are found described in the above section describing the Defendant's piece-rate payment method.

79. The IMWL parallels the FLSA, and the same analysis generally applies to both statutes. *See Condo v. Sysco Corp.,* 1 F.3d 599, 601 n. 3 (7th Cir.1993); *Ladegaard v.*

14

*Hard Rock Concrete Cutters, Inc.,* 2004 U.S. Dist. LEXIS, at *12 (N.D.Ill.2004) (citing *Haynes v. Tru-Green Corp.,* 154 Ill.App.3d 967, 107 Ill.Dec. 792, 507 N.E.2d 945, 951 (4th Dist. 1987)); *O'Brien v. Encotech Constr.,* 2004 WL 609798, at *4, 2004 U.S. Dist. LEXIS 4696, at *13 (N.D.Ill.2004).

## CMWO OVERTIME VIOLATIONS

80. Plaintiffs are owed, pursuant to the CMWO, thousands of unpaid, or underpaid, overtime hours.

81. The claims pursuant to the CMWO are found described in the above section describing the Defendant's piece-rate payment method.

**MINIMUM WAGE CLAIMS FOR PLAINTIFF PATRICIA DIANA MENDEZ**

82. For one of the Plaintiffs in this litigation, Patricia Diana Mendez, the Defendant McKinley has also violated the minimum wage requirements of the FLSA, IMWL and CMWO in a most egregious manner.

83. For Patricia Diana Mendez Defendant McKinley has simply not paid her ANY wages whatsoever since some time in 2023.

84. Plaintiff Patricia Diana Mendez complained in 2023 about another employees improper assessments which were being submitted in violation of insurance and/or Medicare/Medicaid regulations.

85. In retaliation for this lawful complaint, Defendants stopped paying Plaintiff Patricia Diana Mendez for the assessments as a form of punishment.

86. Despite being paid zero dollars, Plaintiff continued to dutifully do her job and provide service and benefit to McKinley and to turn in her assessment sheets seeking payment of her owed wages.

15

87. Yet for part of 2023 and all of 2024, (to date) Defendants have paid Plaintiff Patricia Diana Mendez nothing in violation of the FLSA, IMWL and CMWO which requires payment of, at least, minimum wages and/or overtime wages.

88. Plaintiff Patricia Diana Mendez has repeatedly complained about the lack of pay.

89. Initially Plaintiff was told she was being punished and/or had to correct some type of unnamed work errors otherwise she would receive no pay until those unnamed errors were corrected.

90. Plaintiff asked for the list of alleged errors to be provided, but she was never provided that illusory list nor was she paid for the thousands of work hours that are still unpaid as of this complaints filing.

91. Most recently, in the midst of the Defendants attempts to force Plaintiff to sign a release of claims, Plaintiff meet with Defendant Flores and stated to him explicitly "it is illegal to not pay my wages", and while he promised to correct the failures to pay, as the filing of this complaint the nearly year of unpaid wages remains outstanding.

92. Further Defendants failed to offer to pay the mandated penalties for violations of the FLSA, IMWL and CMO.

## IWPCA CLAIMS OF PATRICIA DIANA MENDEZ

93. In addition to the minimum wage and overtime claims by Plaintiff Mendez, Plaintiff also brings claims for Defendants' violations of the IWPCA prompt payment requirements.

94. Under the IWPCA there is a requirement that due wages are paid within 13 days of their due date.

16

The IWPCA provision reads:

**All wages earned by any employee during a semi-monthly or bi-weekly pay period shall be paid to such employee not later than 13 days after the end of the pay period in which such wages were earned**
**(820 ILCS 115/4) (from Ch. 48, par. 39m-4)**

95.   This provision of the IWCPA does NOT require Defendants to "agree", this is a statutory requirement, it stands alone, a rule that employers in Illinois must follow

96.   Thus any payment of owed wages by Defendants after the filing of this lawsuit does not 'cure' this claim as the late payment is still a violation of the IWCPA.

97.   Thus the Plaintiff is owed the wages and IWPCA monthly penalties on the outstanding wages.

**LATE PAYMENT CLAIMS OF PATRICIA DIANA MENDEZ**

**PURSUANT TO THE FLSA, IMWL AND CMO**

98.   In addition to the duty to pay wages on a timely basis required under the IWPCA, the same timely payment requirement is found in the FLSA, IMWL and CMO.

99.   The FLSA does not specify a particular time in which an employee must be compensated for his or her work; instead, the FLSA requires only that employers pay their employees' wages "on time." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945); *Howard v. City of Springfield, Ill.*, 274 F.3d 1141, 1148 (7th Cir. 2001).

100.   "The FLSA requires—and the Supreme Court has recognized approvingly— that an employee receive on time payment for work performed....[*i.e.*,] that an employer pays an employee on the regularly scheduled paydays." *Martin v. United States*, 117 Fed. Cl. 611, 621 (2014).

101. With respect to overtime wages, "[t]he general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends. When the correct amount of the overtime compensation cannot be determined until sometime after the regular pay period, however, the requirements of the FLSA will be satisfied if the employer pays the excess overtime compensation as soon after the regular pay period as is practicable." *Howard*, 274 F.3d at 1148 (quoting 29 C.F.R. § 778.106).

102. Here Defendants have failed to pay minimum wages and overtime wages of Plaintiff Mendez for months which is an untimely payment, thus if Defendants pay the owed wages, they will still owe added penalties including FLSA liquidated damages, IMWL treble damages, IMWL 5% monthly penalties, fees, interest and costs.

## LATE PAYMENT CLAIMS OF OTHER PLAINTIFFS

103. While Plaintiff Mendez wages were simply not paid, thus were late; that is not the only late payment of wages at issue in this case.

104. The other Plaintiffs Joseph Valle, Catherine McCarthy and Brian K. Turner (and the collective) are also owed overtime and those overtime wages were owed from 2021, 2022, 2023 and 2024.

105. In addition to the failure to pay overtime wages, the same violation causes Defendants to be in violation of the FLSA, IMWL, and CWO timely payment provisions.

## LATE PAYMENT OF REPAYMENT OF BUSINESS EXPENSES

106. In addition to the failure to pay overtime on a timely basis, the Defendants also fail to make timely payment or repayment of Plaintiffs business expenses.

107. Plaintiffs make use of their personal vehicles for work for Defendants, thereby incur business costs or expenses.

108. Defendants are required by the FLSA, IMWL and CMO to repay business expenses of the Plaintiffs on a timely manner.

109. While the Defendants do, eventually, repay the mileage of the Plaintiffs, Defendants take months to do so, thereby failing to pay or repay that expense in a timely manner.

## PLAINTIFFS ARE OWED VACATION (PTO) AND/OR SICK LEAVE

110. Plaintiffs are also owed paid vacation days (often called paid time off or PTO) and/or sick leave days (SLDs).

111. Plaintiffs worked in the city of Chicago for the vast majority of their work hours.

112. Defendant McKinley is located in the City of Chicago.

113. Thus Plaintiffs are covered employees pursuant to the Chicago Paid Leave and Paid Sick and Safe Leave Ordinance, (CPLPSSLO) and/or Chicago Paid Sick Leave Ordinance (CPSLO).

114. The Chicago Paid Sick Leave Ordinance (CPSLO) predates the Chicago Paid Leave and Paid Sick and Safe Leave Ordinance, (CPLPSSLO).

115. The two ordnances provide sick and paid leave for covered employees, the two laws require different provisions of leave, here Defendants violated both as Defendants provided no leave for the Plaintiffs in any manner.

## DEFENDANTS' FAILURE TO MAINTAIN ACTUAL TIME RECORDS

19

116. Plaintiffs also allege that Defendants failed to maintain Plaintiffs and collective employee time records.

117. Upon information and belief, Defendants have never, and still do not maintain any time records of the Plaintiffs and collective.

118. Defendants' failure to preserve the actual time records of Plaintiffs and collective is a separate and distinct violation of the FLSA, CMWO and IWML.

119. The FLSA, CMWO and IWML requires Defendant to save actual time records of Plaintiff and collective, not just an estimation of the hours.

120. The closest Defendants come to a time sheet is a set of assessments.

121. Defendants have no document in which the Plaintiffs punched in at the start of the work day.

122. Defendants have no document in which the Plaintiffs punched out at the end of the work day.

123. Defendants have no document in which the Plaintiffs punched in/out for breaks.

## WAGE RETALIATION FACTS

124. Plaintiffs also bring wage retaliation claims against all Defendants.

125. The Plaintiffs' wage retaliations are based on the Plaintiffs collectively and/or in the name of all similarly situated employees complained about the Defendants improper and illegal payments.

126. Shortly after Plaintiffs complained about the Defendants improper payments Defendants took retaliatory actions, which included terminations of the Plaintiffs employment.

127. Specifically the three named Plaintiffs, Joseph Valle, Catherine McCarthy and Brian K. Turner wrote an email complaining about the Defendants improper wage payments, and shortly after the Defendants terminated their employment.

128. Plaintiffs wrote an email which in part reads:

**The purpose of this email is to inform you that we are concerned by the latest directive that was given to the MCR program. To our understanding, daytime crisis workers, regardless of their employment status, are required to report to Insight Hospital at 9 AMto begin their shift. This directive implies that the crisis workers who are not classified as full-time and are ambiguously classified as part-time are subject to a $40 shift pay once our 9 AM shift begins at Insight Hospital. We are not salaried, nor do we receive an hourly wage; however, we are being directed to begin our shift at Insight Hospital for a $40 shift pay. Needless to say, this would be $5 per hour on an 8hr shift. We are only paid $125 per completed crisis call. If we do not complete a crisis call, then we only receive $40 for shift pay while sitting at Insight Hospital. This paradigm is consistent with daytime crisis workers working 11-hour shifts from 6am-5pm for years and recently changing in March 2024. We were never offered or paid overtime. We even complete paperwork after our shifts therefore our shifts never end. Sick/Vacation/Personal days do not exist for crisis workers. If you check with our direct supervisors, we have never been assigned sick/vacation/personal hours and have been with the agency for 10+ years. These expectations do not appear to be consistent with the following Illinois Department of Labor laws:**

**Paid Leave For All Workers Act**

**One Day Rest in Seven Act**

129. Defendants, in several emails, responded with vague assertions, and vague promises, but Defendants failed to repay Plaintiffs' owed wages nor did Defendants offer to provide sick and/or vacation days.

130. In addition to the vague assertions, Defendants real response to the wage complaints was to attempt to snuff out any and all wage complaints and/or to "CYA" and/or to retaliate against the Plaintiffs.

131. The Defendants only significant action was to fire the Plaintiffs and offer token payments tied to an overly broad set of liability waivers. This same token payment offer was premised on the Plaintiffs' termination date of November 29, 2024.

132. The original overtime complaint email was sent by Plaintiffs on 9/20/24 and the termination notice was issued on 10/15/24, just twenty-five (25) days after Plaintiffs complained about the Defendants failure to pay overtime.

133. While the termination notices and liability waivers terminated employment on 11/29/24, the Defendants issued them on 10/15/24.

134. Thus Defendants sought to snuff out the Plaintiffs wage complaints, and sought to insulate themselves by forcing all similarly situated employees to accept a small and insufficient payment as a token consideration for millions of dollars of owed wages and benefits.

135. On 12/6/24 Defendants carried out the threatened/promised terminations of Plaintiff Valle and Plaintiff Mendez.

136. While Defendants did not terminate Plaintiff McCarthy, rather Defendants promised her a full time job, details, terms and offered compensation were not provided to her as of this filing. Additionally lack of complete retaliation against one, does not negate retaliation against others.

137. Finally Plaintiff Turner's status is also unknown at the time of this filing.

**WAGE RETALIATIONS BY EMPLOYER HAVE INCREASED AND HEIGHTENED SINCE FILING OF THIS LAWSUIT**

**Timeline of Suit**

138. This lawsuit was filed on October 22, 2024. (See Docket Document # 1).

22

139. Service of the suit, via request for Waiver, was served on the registered Agent for the employer ADA McKinley.

140. The registered Agent for McKinley is also the Individual Defendant Jamal K Malone.

141. The service of this wage demand lawsuit was made via Certified mail, with delivery on Defendant Malone at 4:16 PM on October 28, 2024.

**Retaliations began Immediately After Service**

142. Immediately following, in continuing to this very filing, Defendants have orchestrated a series of harassments, punishments and retaliations all motived by this lawsuit.

**DEFENDANTS TAKE UNAUTHORIZED DEDUCTIONS**

143. On November 4, 2024 Plaintiff J. Valle received his paycheck and Defendants had taken an unauthorized deduction of $325.00, allegedly for the pre-textual reason that Plaintiff Valle had not completed "bed search" documentation.

144. Dr. Johnson took further actions to deduct further earned payments to Plaintiff totaling approximate $900.00.

145. The retaliation is obvious as Plaintiff Valle had never before had to submit bed search documentation to be paid for this work duty.

146. Plaintiff Valle protested the illegal deduction and retaliation in an email shortly after, but to this date has not been paid the owed wage payment.

147. Defendant has maintained falsely that the tracking sheet was always required, despite the fact that Plaintiff Valle had never before submitted it for payment.

23

148. The tracking sheet was only used internally to communicate the status of clients, from one employee to another, if the client/patent was being handled by more than one employee of McKinley.

149. This is further shown as pretext as Plaintiff Valle had a recorded training on the subject the very same day with no mention of this hospital tracking sheet.

150. To this day, Dr. Johnson continues to claim that the packets must be competed to "fidelity" using purposely vague lingo to cloak his retaliatory intent.

**NEW WAGE AGREEMENTS APPLIED RETROACTIVELY**

151. While Defendants are free to add regulations and rules, unless those are in retaliation like these, however adding changes to wage agreements after the work is done is a violation of the IWPCA.

152. The IWPCA reads in part:

> (820 ILCS 115/10) (from Ch. 48, par. 39m-10)
> Sec. 10. Employers shall notify employees, at the time of hiring, of the rate of pay and of the time and place of payment. Whenever possible, such notification shall be in writing and shall be acknowledged by both parties. **Employers shall also notify employees of any changes in the arrangements, specified above, prior to the time of change.** Employers shall keep records of names and addresses of all employees and of wages paid each payday, and shall furnish each employee with an itemized statement of deductions made from his wages for each pay period.

153. Here Defendants changed the method of payment/work requirement, after the work was done, in violation of the IWPCA.

**DEFENDANT INCITES PLAINTIFF BY DEDUCTIONS, REFUSES TO FIX OR EVEN MEET, LEADING TO RETALIATORY DISCIPLINE**

154. On 11/6/24 Plaintiff Valle was also issued oral discipline for having used profanity in the office.

24

155. Use of profanity is not uncommon in the private offices of the Defendants, thus the administration of discipline is clearly retaliatory.

156. This is further verified as the Plaintiff's supervisor was present and she did not discipline the Plaintiff rather Plaintiff was oral disciplined by Dr. Johnson.

157. Plaintiff's use of profanity was an provoked incitement, as Defendants first deducted over $200 in wages, then refused to address the issue. First Plaintiff emailed about the deduction twice, and then waited in the office for a meeting that was promised but never occurred as Defendants refused to address the issue.

158. On December 4, 2024 Plaintiff Valle was given an assessment, but was subsequently locked out of the Defendants computer system and/or email system, forcing Plaintiff to transfer the assessment to another employee. The lock-out and forced transfer were both retaliations for Plaintiff's wage claims and both were instituted by Defendant Johnson. Requests for clarification or correction of the lock out were unanswered as most Plaintiffs inquires are after the lawsuit was filed.

### RETALIATIONS AGAINST PLAINTIFF TURNER

159. Defendants' retaliations also were brought against Plaintiff B. Turner.

160. On 11/5/24 Plaintiff Turner was falsely told that he was missing forty-two (42) "uploads in the database".

161. This allegation was false and quickly shown untrue by the Plaintiff's supervisor who verified that the uploads were not outstanding.

162. Despite the disproven false claim, Plaintiff Turner was removed from the schedule, costing him assessments that should have been assigned to him, which were instead assigned to employees that had not filed a wage lawsuit.

163. While Plaintiff Turner has had a long standing complaint that he lacks assigned equipment and inactivation of his password and/or login, these issues have been outstanding for a long time; yet Defendants took no actions until and only after learning of the wage lawsuit.

164. On 11/8/24 Plaintiff Turner was subject to a discipline meeting relating to these access issues, in which Plaintiff Turner repeated that he had not been issued a company computer nor phone. Defendant Johnson promised to have both issued shortly, but to date no equipment has been issued.

165. This above retaliations by Defendant Johnson is further reason for naming of him as a Defendant.

### RETALIATIONS AGAINST PLAINTIFF MENDEZ

166. The retaliations also have impacted Plaintiff P. Mendez.

167. As described above Plaintiff Mendez has been unpaid by Defendant McKinley since February of 2024.

168. Plaintiff Mendez has been working, providing time sheets of her work, and asking to be paid since February of 2024, and has not been paid anything in the months of February to October of 2024.

169. When Plaintiff Mendez complained about her unpaid wages, she was told she was being punished for "bad paper work".

170. In one follow-up email to the person handling the back pay for Plaintiff Mendez, the person confessed that she had no control on the holding of the wages,

rather that the release of the wages was being controlled by "upper management". Plaintiffs believe that upper management are the Defendants in this lawsuit.

171. This is not a proper defense to failure to pay wages, also is false, as Plaintiff was being punished for other illegal reasons.

172. Subsequently Plaintiff Mendez was finally paid some of her back owed wages, Defendants' paid her a gross payment of $25,000.00 resulting in very large tax and other deductions due to the size of the check.

173. This large payment was also intended to harm Plaintiff as Plaintiff should not have to pay added taxes and penalties rather Plaintiff should be paid paycheck by paycheck; until all 10 months of back pay is made up.

174. This gross payment also appears to be retaliation as Plaintiff asked for paycheck by paycheck, not gross payments, thus the deliberate failure to pay properly, in the face of requests for proper payment, show animus intent.

175. Further the bulk $25,000 payment also in violation of various wage laws and regulations including:

176. FLSA violations where employer "did not, among other things, keep separate wage records for each employee, mark the exact hours of work for each employee, or provide the net pay for each employee in the pickle harvest.") *rev'd on other grounds*, 978 F.2d. 201 (5th Cir. 1992); *Osias v. Marc*, 700 F. Supp. 842, 844 (D. Md. 1988) (noting employer's "documents did not specify actual hours worked and often grouped two workers' earnings under one person's name.").

177. Similarly here Defendants' bulk payment to Plaintiff failed to have mark/record the hours of work, nor net pay for what pay period.

178. The regulations additionally require an employer to "maintain and preserve" employment records indicating, among other information, "[h]ours worked each workday and total hours worked each workweek." 29 C.F.R. § 516.2(a)(7).

179. Again here the Defendants bulk payment does not include any note of what hours were paid for what work weeks.

180. Further the bulk payment is in violation of the DOL handbook on bulk payments which reads:

**32j06　　Lump-sum overtime payment.**
Under appropriate circumstances, and where close scrutiny reveals there is a clear understanding between the employer and the employee that a lump-sum payment is predicated on at least time and one-half the established rate, and that overtime payment is clearly intended, the fact that the payment is a lump sum will not result in a violation if it equals or exceeds the proper overtime payment due.  For example, during a limited period each year hourly-rated employees worked after regular hours on a special job for their employer.  Under a clearly understood agreement with his/her employees, the employer, based on experience paid for this special job in a lump sum arrived at by computing time and one-half the regular rate for the estimated special job hours, and then adding an additional bonus amount.  This policy shall be applied very narrowly and shall not be applied to lump-sum payments which are nothing more than bonuses for working undesirable hours.
https://www.dol.gov/agencies/whd/field-operations-handbook/Chapter-32#B32b02\

181. Here Plaintiff and Defendants did not have any agreement to allow for bulk payment, rather Plaintiff specifically demanded payment week by week or check by check.

182. The retaliations continued shortly after with the Defendants ordering Plaintiffs to do additional work duties for which they were never required to do, nor did Plaintiffs receive any compensation for this work initially.

183. In late November of 2024 Plaintiff Mendez finally received a normal appearing check, but only paid thirty-three (33) hours, and Defendants failed to designate what pay period was being paid, thus Plaintiff had no way of tracking the back pay being paid, and to date no accounting has been provided despite multiple requests for clarification.

184. More significantly and a greater retaliation for Plaintiff Mendez's wage complaints, Defendants took Plaintiff Mendez off the schedule beginning approximate two weeks prior to the filing of this Amendment.

185. Plaintiff Mendez protested, complained and inquired about being removed from the schedule, but received no answer from Defendants to explain the retaliatory removal from the schedule.

186. Plaintiff learned she was off the schedule from her supervisor Jackie, but even Jackie the supervisor had no idea why Plaintiff was taken off the schedule.

187. Plaintiff Mendez was also ordered to stop sending Defendants communications by text message, despite the fact that communication via text had occurred daily for years.

188. Finally Defendants have sought to "blame the victim" by blaming Plaintiff for allegedly "hoarding" her time/assessment sheets, this is a false claim and false excuse, as Plaintiff Mendez did not hoard her sheets, rather she turned them in on time and consistently.

## DEFENDANTS CREATED NEW UNPAID JOB DUTIES IN PUNISHMENT FOR PLAINTIFFS' LAWSUIT

189. Plaintiffs were ordered to process, scan and upload, additional paperwork. All of the records were to have been processed by other employees or contractors, yet now after the lawsuit was served on Defendants, these new job duties were assigned to harass and retaliate against Plaintiffs.

190. Further the work was initially entirely unpaid, upon protest of the lack of any payment, Defendants agreed to pay 'Shift pay' of $40 for an entire day, or approximate $4.00 per hour.

191. While doing the new data entry job tasks Plaintiffs were removed from the schedule costing Plaintiffs compensation via missed assessments.

## CLAIMS OF EXEMPTION FROM OVERTIME BY PAYMENT "BY FEE" FALSE AND NOT A PROPER DEFENSE

192. In November of 2024, about a month after filing this claim, Defendants have asserted that the Plaintiffs are not hourly employees, rather Plaintiffs are/were exempt employees, thus are owed no overtime wages.

193. Defendants assert this by claiming that Plaintiffs are performing exempt work and are paid on a "Fee Basis" writing:

30

….."pursuant to 29 CFR § 541.605, meaning that they receive a pre-determined set fee for a visit or call regardless of the amount of time it took to complete; there was no set amount of time established for any given visit; and the length of each visit varied. Thus, a clinician will get the same fee regardless of whether the call takes an hour or a half an hour. The fee-basis payments are intended to cover all of the work associated with that visit, including completion of the necessary documentation. Once the visit, including the required documentation was completed and submitted, the visit is considered complete and thus compensable."

194. Plaintiffs firstly deny this claim that they are paid on a "fee basis" as the Defendants responses to complaints about their unpaid/under-paid wages stated that Plaintiffs were hourly workers.

195. Additionally, Plaintiffs paychecks and other HR materials list Plaintiffs as hourly employees, not exempt employees.

196. Plaintiffs' initial offer letters listed Plaintiffs as hourly employees and hourly rates of pay, not exempt employees.

197. Plaintiffs paychecks list Plaintiffs rates of pay as $25.00 per hour and as hourly employees, not exempt employees.

198. Other references to hourly wage were made by Defendants various communications, paperwork and HR documentation.

199. Thus Plaintiffs refute that they were paid on a "Fee basis".

200. Plaintiffs believe any such Defendants claim is seeking to redefine their classification, retroactively to avoid liability in this litigation.

31

201. However, even if Defendants disputed fact of an exempt status is found correct the Defendants' claims of exemption status is lost and therefore Plaintiffs are owed overtime (and minimum wages in some cases).

202. Defendants claims of exemption are lost based on "fee basis" being improper as fee basis is intended under the FLSA/IMWL regulations to be paid only in for the kind of job that is unique rather than for a series of jobs repeated an indefinite number of times and for which payment on an identical basis is made over and over again." (see § 541.605 (a)).

203. Here Plaintiffs "kind of job" is not unique, rather Plaintiffs are accomplishing the same job over and over: doing assessments over and over and over.

204. Defendants claim is comparable to *Ducharme v. MADEWELL CONCRETE, LLC,* C.A. No. 6:20-1620-HMH.**(DC South Carolina** May 26, 2021**)** which found:

> "It is undisputed that Plaintiff repeatedly engaged in residential concrete projects for which commissions of a specific percentage were paid over and over. The court finds that being paid a percent commission for each project is "a series of jobs repeated an indefinite number of times and for which payment on an identical basis is made over and over again" and does not constitute payment on a "fee basis." See Charbonneau, 487 F. Supp. 3d at 1092; Vivar v. Benjamin's Behav. Health Servs., PLLC, Civ. Act. No. H-18-3060, 2019 WL 6766842, at *3 (S.D. Tex. Dec. 11, 2019) (unpublished); Pierce v. Wyndham Vacation Resorts, Inc., No. 3:13-CV-641-CCS, 2017 WL 4480199, at *5 (E.D. Tenn. Oct. 6, 2017) (unpublished). Therefore, the court finds Plaintiff was not paid on a "fee basis" during the time period in which his pay was commission based."

205. Likewise here Plaintiffs are making assessments and receiving the same pay for those assessments over and over like the concreate projects found in *Ducharme.*

206. Each assessment has variations, but the procedures are the same over and over. Like in *Ducharme* where the concrete projects had variations, size, location ect, but the overall procedures were the same, like the Plaintiffs assessments.

207. In the alternative, the Fee Basis also must pass the salary threshold for Exempt work, and in at least one case (or more), Defendants have paid insufficient funds to maintain the salary threshold.

208. The requirement for salary per the fee basis reads:

**(b) To determine whether the fee payment meets the minimum amount of salary required for exemption under these regulations, the amount paid to the employee will be tested by determining the time worked on the job and whether the fee payment is at a rate that would amount to at least the minimum salary per week, as required by §§ 541.600(a) through (c) and 541.602(a), if the employee worked 40 hours.....** § 541.605 (b) Fee basis

209. Thus the fee pay must meet the minimum salary, and in the case of Plaintiff Mendez this claim of exemption fails as Plaintiff Mendez has been paid zero dollars and zero cents each and every pay period since February of 2024.

210. Additionally the "fee basis" also fails as the fee must be paid regardless of the outcome, but here McKinley does not pay anything for assessments that are not completed or incomplete, thus fee basis exemption fails based on this non-payment policy of McKinley.

211. "Payments based on the number of hours or days worked and not on the accomplishment of a given single task are not considered payments on a fee basis." § 541.605(a). Here Plaintiffs are only paid based on the accomplishment of the assessment task, if no placement is made Plaintiffs are not paid the compensation, thus the "fee basis" fails as a defense.

212. The failure to ensure full payment is also similar or the same as the exemption is lost as the quality or quantity of the work should not effect the payments. Here the quality and quantity does reduce the payments thus exemption is lost.

213. Additionally, for exempt employees, Defendants must have a policy of paid time off, otherwise the exemption is lost, here for Plaintiffs there is no paid time off, no policy of PTO or sick leave, thus any Exemption claim is lost.

## CLAIMS OF RANDY SADLER

214. The claims filed herein for Randy Sadler are limited to FLSA claims.

215. Randy Sadler has filed claims herein pursuant to the FLSA only, as Plaintiff Sadler has previously filed his Illinois state wage law claims with the Illinois Department of Labor.

216. Thus Plaintiff Sadler does not seek herein the same claims currently on file with the IDOL, as duplicate filings would be improper.

217. Additionally Plaintiff Sadler can not file the IDOL claims here without potentially losing some of those claims due to statute of limitations issues.

## ADDITIONAL BASIS FOR LOSS OF EXEMPTION

218. Plaintiffs also allege that Defendants actions and inactionS have also caused Defendants to lose claims of exemption.

219. Plaintiffs allege that Defendants paid Plaintiffs, partly, on an hourly basis, and thus Defendants lose any claims that Plaintiffs were properly exempt.

220. Plaintiffs "time sheets" clearly include a provision for payment of the Plaintiffs wages on an hourly basis as the schedule of payments includes "crisis endorsement $25/PH".

221. Courts have found such payment per hour, even for portions of pay, to void claims of exemption.

222. This basis for lost exemption is supported by *Elwell v. University Hospitals Home Care Services,* 276 F. 3d 832 - Court of Appeals, 6th Circuit 2002 (copy of *Elwell* attached as Ex 3). Elwell reads in part:

> **She contends, however, that University's compensation plan, which combines fee payments and hourly compensation, does not qualify as a fee basis because it ties compensation, at least in part, to "the number of hours or days worked and not on the accomplishment of a given single task." 29 C.F.R. § 541.313(b).**
> **We agree. The definition of "fee basis" in 29 C.F.R. § 541.313(b) states that such arrangements are characterized by payment for a completed task "*regardless* of the time required for its completion." (emphasis added). This language suggests that a compensation plan will not be considered a fee basis arrangement if it contains any component that ties compensation to the number of hours worked. This is contrasted with the salary basis regulation, which explicitly provides that "additional compensation besides the salary is not inconsistent with the salary basis of payment."[2] 29 C.F.R. § 541.118(b**

223. In addition to the exemption being defeated via payment of hourly rate, the regulations also require payment of wages of "at least" the minimum rates.

224. In other words the "fee" paid must equate to a minimum rate equal to an equivalent salary, or again the Exemption is lost.

225. Here there are many instances where the rate of payments is insufficient. In some weeks Plaintiffs receive just $300 for a month-long work period.

226. Additionally, Defendants will be required to testify as to this calculation.

227. That testimony would include the "fee" paid AND the hours that the fee took to be earned. These figures are used to calculate the rate and to ensure it is equal to the salary equivalent.

228.    Defendants EVOVL documents fail to record the actual work time, rather only capture part of the work day, thus Defendants cannot calculate this math, as the time records are insufficient and inaccurate.

229.    In support Plaintiff cites DELIZO v. ABILITY WORKS REHAB SERVICES, LLC, Dist. Court, ED Michigan 2020 which found:

> To determine whether an individual paid on a fee basis is exempt, the fee payment is converted by a two-step calculation to allow a comparison to the minimum salary that would qualify a salaried employee as exempt. 3 Emp. Coord. Compensation § 3:23. First, the amount paid to an employee is divided by the amount of time worked on the job; second, that number is multiplied by forty hours per week. Id.; see 29 C.F.R. § 541.605(b). Once that number is calculated, it can be compared to the statutory minimum wage threshold that would apply to salaried employees. Here, the statutory minimum wage threshold was $455 per week.[2]

> Because one of the inputs to this formula is the amount of time spent on a job, the calculation requires an accurate determination of the time actually spent on it. See Rindfleisch v. Gentiva Health Servs., Inc., 962 F. Supp. 2d 1310, 1320 (N.D. Ga. 2013) ("The statue provides that "[t]he adequacy of a fee payment . . . can ordinarily be determined only after the time worked on the job has been determined.") (emphasis in original).

> Khatri testified as to how long he believed Plaintiffs should have been spending on the job based on "industry standards." Khatri Dep. at 89. He said that a nurse typically spends "about an hour at the patient home for the start of care" and "thirty to forty-five minutes max for revisits." Id. This includes time spent on paperwork, which Khatri says happens throughout the visit as the nurse is assessing and talking to the patient. Id. at 92-93. When asked about how long an entire visit (follow-up or initial) might take, including drive time and administrative tasks, Khatri could not give an answer. Id. at 118. However, estimates and standards that may or may not reflect Plaintiffs' actual working hours are not helpful in determining the true number of hours Plaintiffs worked per visit. See Rindfleisch, 962 F. Supp. 2d at 1320. Rather, Ability Works must produce the time each Plaintiff actually spent on the job. Id.

FURTHER RETALIATION ALLEGATIONS FOR PLAINTIFF MCCARTHY

36

230. In November or December of 2024, after firing three other Plaintiffs for their wage complaints, Defendants "rehired" Plaintiff McCarthy.

231. Initially it appeared that Plaintiff McCarthy had escaped Defendants continued retaliations due to the "re-hire".

232. However the retaliations continued to be brought against Plaintiff McCarthy, because of her wage complaints.

233. Plaintiff McCarthy was forced to switch roles to outpatient psychotherapist mainly because of the hostile work environment created by the Defendants.

234. Defendants hostile work environ went beyond mere negative atmosphere to one of an adversarial attitude towards Plaintiff McCarthy, especially from Defendant Johnson.

235. Communication was shut off between Johnson and Plaintiff McCarthy on Johnson's end; due to no fault of Plaintiff McCarthy.

236. Plaintiff would email or call Defendant Johnson, her superior, Defendant Johnson would not answer nor reply.

237. If Plaintiff McCarthy did receive an answer/reply it would be from his assistant, Britney, not Defendant Johnson.

238. Plaintiff McCarthy was forced to go through other employees to get information/answers.

239. If Plaintiff McCarthy raised a concern, it was not acknowledged.

240. Defendant Johnson would flat out lie about things Plaintiff McCarthy said/did....like the airtag situation.

37

241. In this situation Plaintiff McCarthy did not refuse to carry an airtag, rather she stated it was not legal to demand that she wear an airtag on her person--- and that was verbally communicated with triage staff and his assistant.

242. Plaintiff McCarthy was fine w/an airtag on the car, the car keys, and/or the Ada equipment she used, but not located on her body.

243. Communication was cut off from many upper management to Plaintiff McCarthy.

244. Plaintiff McCarthy had stopped emailing/calling Defendant Valerie Mercer also due to lack of response.

245. Even the transition to "re-hire" was off-putting. At end of Nov/December of 2024 Plaintiff McCarthy had no idea if she was still employed officially with Defendants.

246. Plaintiff McCarthy kept showing up to the office/working not knowing for almost an entire month.

247. Plaintiff McCarthy did not sign a contract for full time until Jan 2025 and then Defendants altered her work record was back-dated to falsify the appearance that Plaintiff McCarthy started official full-time status in December of 2024.

248. After the transition, Plaintiff McCarthy was not given an assigned/stable office to work in, and that situation is worse now.

249. Currently, in May of 2026, Plaintiff McCarthy has to reserve "hotelling space" to see clients and that is difficult since they have hired so many more clinicians, most all international hires hired to replace those fired.

250. Plaintiff McCarthy requested a nameplate like all the other clinicians have but was told she has no committed office.

251. Plaintiff McCarthy started an in-school based outpatient services program through Ada with 2 schools this school year but that was put on hold for several months due to a contract error on Ada's part. Plaintiff McCarthy expressed her dismay/confusion over Ada placing a new "boss" over her to take over the school-based program without telling her/offering her the position Plaintiff McCarthy was already doing.

252. All these facts have continued to cause Plaintiff stress and distress, all because of the Plaintiff's wage complaints.

## Defendants' Actions were Willful, Knowledgeable and/or Had Reckless Disregard for FSLA Regulations

253. Defendants required and permitted Plaintiffs, and the FLSA Collective, to work more than 40 hours in a week. Defendants did not pay Plaintiffs and the FLSA Collective the proper overtime rate for all of these overtime hours and/or minimum wage hours.

254. Defendants' unlawful conduct has been uniform, widespread, repeated and consistent. Defendants' willful violations are especially demonstrated by their knowledge that its employees were not paid the correct rate of pay.

255. All allegations and claims alleged herein should be read in the alternative, to the extent such an interpretation is necessitated by law and permitted under Federal Law, Illinois Law and other state laws.

256. All allegations plead herein are plead with personal knowledge as to those allegations to which Plaintiffs have such knowledge and based upon "information and belief" as to all other allegations.

**FIRST CLAIM FOR RELIEF**
**Individual Against Defendants (each and all)**
**Under the Illinois Minimum Wage Law "IMWL"**
**(but excluding Randy Sadler)**

257. Plaintiffs Joseph Valle, Patricia Diana Mendez, Catherine McCarthy and Brian K. Turner reallege and incorporate by reference all the preceding paragraphs, as if fully set forth herein.

258. Plaintiffs Joseph Valle, Patricia Diana Mendez, Catherine McCarthy and Brian K. Turner are/were employees of the Defendants pursuant to the IMWL.

259. Plaintiffs Joseph Valle, Patricia Diana Mendez, Catherine McCarthy and Brian K. Turner are/were employed by Defendant as employees.

260. It is and was at all relevant times, a policy of Defendant to pay its employees at an improper overtime rate of pay and/or fail to pay overtime hours at overtime rate of pay and/or to not pay for overtime hours at all.

261. The Defendants unlawful conduct was and is not inadvertent, de minimis, isolated or sporadic, but widespread, repeated and part of a pattern and practice of conduct affecting most if not all of the Defendant's employees.

262. As a result of the foregoing, Plaintiffs Joseph Valle, Patricia Diana Mendez, Catherine McCarthy and Brian K. Turner have been damaged in an amount to be determined at trial.

263. Illinois law contains a three-year statute of limitations regardless of whether the violation was willful. 820 ILCS 105/12(a).

264. Defendant employs more than four (4) employees at all relevant time periods.

265. Plaintiffs also bring retaliation claims pursuant to this law and named against all Defendants as detailed above.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

A.      Unpaid wages and liquidated damages pursuant to 29 U.S.C. § 201 et seq. and the supporting an Illinois Department of Labor and United States Department of Labor regulations;

B.      Unpaid regular wages, and overtime wages pursuant to the IMWL, including treble damages and 5% penalties per month;

C.      Compensation originating from MCKINLEY company policies, contractual obligations and ERISA requirements owed as a result of unpaid overtime wages;

D.      An injunction requiring Defendants to pay all statutorily-required wages pursuant to Illinois Law;

41

E.      Certification of this case as a Collective action and a Class Action;

F.      Designation of the Plaintiff as representative of the Collective, and counsel of record as Collective;

G.      Issuance of a Declaratory Judgment that the practices complained of in this Complaint are unlawful under Illinois Law, 820 ILCS 105/1 *et seq.* and supporting Illinois Department of Labor regulations and other state wage laws;

H.      Attorneys' fees and costs of this action in accordance with FLSA and Illinois Wage Laws; and

I.      Unpaid wages and liquidated damages pursuant to IWPCA and the supporting Illinois Department of Labor regulations;

J.      Consequential damages;

K.      Issuance of a Declaratory Judgment that the practices complained of in this Complaint are unlawful under Illinois Law, 820 ILCS 105/1 *et seq* and supporting Illinois Department of Labor regulations;.

L.      and costs of this action; and

M.      all remedies available for Plaintiffs retaliatory claims, including emotional distress and pain and suffering and other punitive damages such as liquidated damages.

N.      Such other relief as this Court shall deem just and proper.

## SECOND CLAIM

**On Behalf of Plaintiffs and All Opt-In
Employees Against Defendants (each and all)
As a Collective Action
(FLSA Claims, 29 U.S.C. § 201 et seq.)**

266.    Plaintiffs reallege and incorporate by reference all the preceding paragraphs, as if fully set forth herein.

267. The Collective claims include all plead claims found in this complaint which fall within the coverage of FLSA.

268. The Collective claims include all employees which Defendant has paid the incorrect overtime rate and/or failed to pay all overtime hours at an overtime rate of pay and/or paid by the improper piece-rate method.

269. At all relevant times, Defendant MCKINLEY has been, and continues to be, an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, Defendants has employed, and continues to employ, "employee[s]," including the Plaintiffs, and each of the members of the FLSA Opt-Ins, that have been, and continue to be, engaged in interstate "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.

270. At all relevant times, Defendants has engaged, and continue to engage, in a willful policy, pattern, or practice of requiring their employees, including the Plaintiffs and members of the prospective FLSA Class, to work in excess of forty (40) hours per week without compensating such employees for all hours worked and/or at the proper rate of overtime pay rate.

271. At all relevant times, the work performed by employees including the Plaintiff and prospective FLSA Opt-Ins, employed at Defendant were, and continue to be, required or permitted by Defendants, for the benefit of Defendants, directly related to such employees' principal employment with Defendants, and as an integral and indispensable part of such employees' employment of Defendants.

272. As a result of the Defendant willful failure to record or compensate its employees – including Plaintiff and members of the prospective FLSA Class –

43

employed by Defendant for all hours worked, Defendant has violated, and continues to violate, the maximum hours provision of the FLSA, 29 U.S.C. § 207(a)(1), and § 215(a).

273. As a result of the Defendant's willful failure to record, report, credit, and/or compensate its employees employed by Defendant, including the Plaintiffs and members of the prospective FLSA Class, Defendant has failed to make, keep and preserve records with respect to each of their employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, including 29 U.S.C. §§211(c) and §§ 215(a).

274. The foregoing conduct, as alleged, violated the FLSA, 29 U.S.C. §§ 201 et seq.

275. Plaintiffs, on behalf of themselves and all FLSA Opt-Ins, seek damages in the amount of their respective unpaid compensation, plus liquidated damages, as provided by the FLSA, 29 U.S.C. § 216(b), and such other legal and equitable relief as the Court deems just and proper.

276. Plaintiffs, on behalf of themselves  and all FLSA Opt-Ins, seek recovery of attorneys' fees and costs of action to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

277. Plaintiffs have consented to be a party to this action, pursuant to 29 U.S.C. § 216(b).

278. At all times relevant to this action, Plaintiffs and all FLSA Opt-Ins were employed by Defendants within the meaning of the FLSA.

279. At all times relevant to this action, Plaintiffs and all FLSA Opt-Ins were engaged in commerce and/or the production of goods for commerce and/or Defendant

were an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

280.     Due to Defendant's FLSA violations, Plaintiff  and all FLSA Opt-Ins are entitled to recover from Defendant their unpaid compensation, an additional equal amount as liquidated damages, additional liquidated damages for unreasonably delayed payment of wages, reasonable attorneys' fees, and costs of the action, pursuant to 29 U.S.C. § 216(b)§ 6 of the Fair Labor Standards Act, 29 U.S.C.A. § 206, 9 FCA title 29, § 206, provides that every employer shall pay to each of his employees who is engaged in interstate or foreign commerce or in the production of goods for such commerce, wages at specified hourly rates.

281.     Plaintiffs also bring retaliation claims pursuant to this law and named against all Defendants as detailed above.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the IWML and the FLSA Collective, pray for the following relief:

A.     That, at the earliest possible time, the Plaintiff be allowed to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of Court-supervised notice, to employees whom have been employed by the Defendant and as alleged herein this complaint. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join in this lawsuit if they believe they were not paid all wages for work performed.

B.      Unpaid wages and liquidated damages pursuant to 29 U.S.C. § 201 <u>et</u> <u>seq</u>. and the supporting an Illinois Department of Labor and United States Department of Labor regulations;

C.      Unpaid regular wages, and overtime wages.

D.      Compensation originating from MCKINLEY company policies, contractual obligations and ERISA requirements owed as a result of unpaid overtime wages;

E.      An injunction requiring Defendants to pay all statutorily-required wages pursuant to Illinois Law;

F.      Certification of this case as a Collective action and a Class Action;

G.      Designation of the Plaintiff as representative of the Collective, and counsel of record as Collective;

H.      Issuance of a Declaratory Judgment that the practices complained of in this Complaint are unlawful;

I.      Attorneys' fees and costs of this action in accordance with FLSA and Illinois Wage Laws; and

J.      Consequential damages;

K.      and costs of this action; and

L.      all remedies available for Plaintiffs retaliatory claims, including emotional distress and pain and suffering and other punitive damages such as liquidated damages.

M.      Such other relief as this Court shall deem just and proper.

### **THIRD CLAIM**

### **INDIVIDUAL ACTION PURSUANT TO IWPCA**
**Against the Defendants (each and all)**

282. Plaintiffs Joseph Valle, Patricia Diana Mendez, Catherine McCarthy and Brian K. Turner repeat and re-allege all paragraphs of this complaint.

283. Plaintiffs Joseph Valle, Patricia Diana Mendez, Catherine McCarthy and Brian K. Turner bring IWPCA claims for the following

   a. Defendants failed to pay wages in a timely manner, (within 13 days of employees last work day each work period).

284. The Defendants unlawful conduct was and is not inadvertent, de minimis, isolated or sporadic, but widespread, repeated and part of a pattern and practice of conduct affecting all Defendants' employees.

285. Plaintiffs Joseph Valle, Patricia Diana Mendez, Catherine McCarthy and Brian K. Turner are or were under the control and direction of the owner of the Defendant and/or his agents during the period of the Plaintiff employment under their contracts of service and in fact.

286. Plaintiffs Joseph Valle, Patricia Diana Mendez, Catherine McCarthy and Brian K. Turner were not an independent contractors, rather was an employees of the Defendant by oral agreement and/or written contract.

287. Plaintiffs' Joseph Valle, Patricia Diana Mendez, Catherine McCarthy and Brian K. Turner employment were in the usual course of business for which such service is performed.

288. Plaintiffs Joseph Valle, Patricia Diana Mendez, Catherine McCarthy and Brian K. Turner do not possess a proprietary interest in the Defendant.

289. The Defendant is an "employer" under the terms of the IWPCA section

290. In accordance with IWPCA, an employer is also defined as: "any officer of a corporation or agents of an employer who knowingly permit such employer to violate

the provisions of this Act shall be deemed to be the employers of the employees of the corporation".

291. Individual Defendants are named as employers as they knowingly permitted violations of the IWPCA.

292. Plaintiffs also bring retaliation claims pursuant to this law and named against all Defendants as detailed above.

**PRAYER FOR RELIEF**

WHEREFORE, premises considered, Plaintiffs respectfully prays that each Defendant be summoned to appear and answer herein; for orders as follows:

(A) For an order of this Honorable Court entering judgment in Plaintiff' favor against Defendant;

(B) That the Court award Plaintiffs' actual economic damages in an amount to be determined at trial,

(C) Judgment for any and all civil penalties to which Plaintiff may be entitled;

(D) An order directing Defendant to pay prejudgment interest, reasonable attorney's fees and all costs connected with this action; and

(E) Order payment of punitive damages sufficient to deter Defendant's future retaliations.

(F) all remedies available for Plaintiffs retaliatory claims, including emotional distress and pain and suffering and other punitive damages such as liquidated damages.

(F) Such other and further relief as this Court may deem necessary, just and proper.

**FOURTH CLAIM**

**Individual Action Against Defendant McKinley**
**Under Chicago Minimum Wage Ordinance "CMWO"**

48

293. Plaintiffs Joseph Valle, Patricia Diana Mendez, Catherine McCarthy and Brian K. Turner realleges and incorporate by reference all the preceding paragraphs, as if fully set forth herein.

294. Plaintiffs Joseph Valle, Patricia Diana Mendez, Catherine McCarthy and Brian K. Turner are covered employee by the CMWO

295. Defendant is a covered employer pursuant to the CMWO.

296. It is and was at all relevant times, a policy of Defendant to pay its employees at an overtime rate of pay and/or minimum wage pursuit to the Defendant's improper application of the piece rate.

297. The Defendant's unlawful conduct was and is not inadvertent, de minimis, isolated or sporadic, but widespread, repeated and part of a pattern and practice of conduct affecting most if not all of the Defendant's employees.

298. As a result of the foregoing, Plaintiff Joseph Valle, Patricia Diana Mendez, Catherine McCarthy and Brian K. Turner has been damaged in an amount to be determined at trial.

299. CMWO contains a three-year statute of limitations regardless of whether the violation was willful.

300. Plaintiffs Joseph Valle, Patricia Diana Mendez, Catherine McCarthy and Brian K. Turner also bring retaliation claims pursuant to this law and named against all Defendants as detailed above.

**PRAYER FOR RELIEF**

49

WHEREFORE, premises considered, Plaintiffs Joseph Valle, Patricia Diana Mendez, Catherine McCarthy and Brian K. Turner respectfully prays that each Defendant be summoned to appear and answer herein; for orders as follows:

A)     For an order of this Honorable Court entering judgment in Plaintiff' favor against Defendant;

B)     That the Court award Plaintiffs' actual economic damages in an amount to be determined at trial,

C)     A declaratory judgment that Defendant's practices alleged herein violate the CMO

D)     Judgment for any and all civil penalties to which Plaintiff may be entitled;

E)     An order directing Defendant to pay prejudgment interest, reasonable attorney's fees and all costs connected with this action; and

F)     all remedies available for Plaintiffs retaliatory claims, including emotional distress and pain and suffering and other punitive damages such as liquidated damages.

G)     Order payment of punitive damages sufficient to deter Defendant's future retaliations.

H)     Such other and further relief as this Court may deem necessary, just and proper.

## FIFTH CLAIM

**Individual Action Against Defendant McKinley**
**Under Chicago Paid Leave and Paid Sick and Safe Leave Ordinance,**
**(CPLPSSLO) and/or Chicago Paid Sick Leave Ordinance (CPSLO**

304    Plaintiffs realleges and incorporate by reference all the preceding paragraphs, as if fully set forth herein.

50

305. Plaintiffs' bring claims pursuant to the Chicago Paid Leave and Paid Sick and Safe Leave Ordinance, (CPLPSSLO) and/or Chicago Paid Sick Leave Ordinance (CPSLO).

306. As alleged elsewhere in this complaint, Plaintiffs receive no paid leave (sick or otherwise) and therefore are owed paid leave as detailed above.

307. Plaintiffs also bring retaliation claims pursuant to this law and named against Defendant McKinley as detailed above.

### **PRAYER FOR RELIEF**

WHEREFORE, premises considered, Plaintiffs respectfully prays that each Defendant be summoned to appear and answer herein; for orders as follows:

A) For an order of this Honorable Court entering judgment in Plaintiff' favor against Defendant;

B) That the Court award Plaintiff's actual economic damages in an amount to be determined at trial,

C) A declaratory judgment that Defendant's practices alleged herein violate the above cited laws;

D) damages up to three times the full amount of any unpaid sick time denied or lost, plus interest, costs, and reasonable attorneys' fees.

(E)     Judgment for damages for all owed leave.

(F)      Judgment for any and all civil penalties to which Plaintiffs may be entitled;

(G) An order directing Defendant to pay prejudgment interest, reasonable attorney's fees and all costs connected with this action; and

(H) payment of Plaintiffs fees and costs

(I) Such other and further relief as this Court may deem necessary, just and proper.

## COUNT SIX – Violation of Internal Revenue Code Section 7434

### Alleged by Plaintiff Mendez against Defendant McKinley

308     Plaintiff restates and realleges all prior Paragraphs of this Complaint, incorporated into this count.

309     The Internal Revenue Code, Section 7434, 26 U.S. §7434, prohibits a person from willfully filing a fraudulent information return with respect to payments made to another person.

310     A person may bring a civil action for damages against the person who filed a fraudulent return. Upon a finding of liability, the defendant shall pay the greater sum of $5,000.00 or damages actually incurred by Plaintiffs.

311     Defendants knowingly filed fraudulent Form W-2s and or 1099s which  failed to report alleged payments to Plaintiff Mendez

312     Defendants reported Plaintiff Mendez having $80,000 in income to the IRS.

313     Plaintiff Mendez did not have this amount of income, thus this is a false report to the IRS.

WHEREFORE, Plaintiff Mendez prays for the following relief:

    a.   All remedies available pursuant to _7434

b.  Other relief that is just and right.

Pursuant to Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the Complaint.

Dated:

June 30, 2026

Respectfully submitted,

By: _____ -S-John C. Ireland _____
John C. Ireland

Attorney for the Plaintiffs and FLSA Collective

The Law Office Of John C. Ireland
636 Spruce Street
South Elgin ILL
60177
 630-464-9675
attorneyireland@gmail.com